Kathy KEETON, Plaintiff-Appellee,

v.

HUSTLER MAGAZINE, INC., and Larry C. Flynt, Defendants-Appellants,

LFP, Inc., Flynt Distributing Company, Inc., and David L. Kahn, Appellants.

No. 709, Docket 86–7955.

United States Court of Appeals, Second Circuit.

Argued Jan. 12, 1987.

Decided April 2, 1987.

Alan Isaacman, New York City (Cooper, Epstein & Hurewitz, and Anderson Russell Kill & Olick, P.C., of counsel), for defendants-appellants.

Jeffrey Daichman, New York City (Thomas V. Marino, Grutman Miller Greenspoon & Hendler, of counsel), for plaintiff-appellee.

Before PRATT, MINER and MAHONEY, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Seeking to avoid the Pyrrhic victory of an unsatisfied libel judgment, appellee Kathy Keeton has tried to enforce her New Hampshire federal judgment in New York State. New York's judgment enforcement techniques are complemented by procedures designed to facilitate the registration of foreign, or out-of-state, judgments, for New York will, with specified exceptions, simply recognize a foreign judgment as its own, rather than require a separate action on the judgment.

Here, appellants challenge Keeton's attempt to register and enforce in New York

her judgment for $2,000,000 plus interest rendered in the United States District Court for the District of New Hampshire against Larry Flynt and Hustler Magazine, Inc. (collectively "Hustler"). Hustler removed Keeton's enforcement proceedings from New York Supreme Court, New York County, to the United States District Court for the Southern District of New York, Edmund L. Palmieri, *Judge,* which denied Hustler's motions to enjoin enforcement of and to set aside the judgment entered by Keeton in state supreme court. We affirm.

## BACKGROUND

Alleging that she had been defamed by certain portrayals in Hustler magazine, Keeton sued Hustler for libel. Following her well-publicized victory on jurisdictional grounds in the Supreme Court, *see Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), the case went to trial, and on August 8, 1986, judgment on the jury's verdict of $2,000,000, plus interest, was entered for Keeton in the United States District Court for the District of New Hampshire. After its post-trial motions for judgment notwithstanding the verdict and for a new trial were denied, Hustler appealed to the United States Court of Appeals for the First Circuit. The district court denied Hustler's motion to stay execution of the judgment pending appeal unless Hustler posted a $2,000,000 supersedeas bond, but Hustler did not then, and has not to date, posted such a bond. In addition, Hustler's motion to the first circuit for a stay of execution pending appeal has twice been denied.

On October 3, 1986, Keeton filed her New Hampshire federal judgment in Supreme Court, New York County, pursuant to Article 54 of New York's Civil Practice Law and Rules, which is New York's embodiment of the Uniform Enforcement of Foreign Judgments Act, *See* N.Y.Civ.Prac. Law §§ 5401–5408 (McKinney 1978). Hustler removed Keeton's Article 54 proceeding from state supreme court to the United States District Court for the Southern District of New York, where its requests to enjoin enforcement of and to set aside the

judgment, as well as for an interim stay of execution of the judgment, were denied. Additionally, the district court denied Hustler's motion to quash various subpoenas and restraining notices that had been served on the Hustler defendants. The district court concluded that Hustler's motions culminated a series of dilatory tactics taken to frustrate satisfaction of Keeton's judgment. This appeal followed.

On appeal, Hustler contends that Keeton may not register and enforce her judgment in New York while its appeal is pending in the first circuit, and that the federal registration scheme preempts any application of Article 54 to Keeton's federal judgment. Finding no merit to Hustler's arguments, we affirm.

## DISCUSSION

### I. *The Registration Provisions.*

■ Article 54 defines a foreign judgment as "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state, except one obtained by default in appearance, or by confession of judgment." N.Y.Civ.Prac.Law § 5401 (McKinney 1978). Article 54 permits a qualifying foreign judgment to be filed in any county clerk's office, and directs that

[t]he clerk shall treat the foreign judgment in the same manner as a judgment of the supreme court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of the supreme court of this state and may be enforced or satisfied in like manner.

*Id.* § 5402(b); *see id.* § 5402(a).

Hustler urges that Keeton may not invoke Article 54 because to do so would contravene clear federal policy. Specifically, Hustler contends that 28 U.S.C. § 1963, which governs registration of judgments of one federal district court in another federal district, when combined with section 5018(b) of the New York Civil Practice Law and Rules, provides the exclusive means for registering and enforcing Keeton's

New Hampshire federal judgment in New York. Section 1963 provides, in pertinent part:

A judgment in an action for the recovery of money or property now or hereafter entered in any district court *which has become final by appeal* or expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judgment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963 (emphasis added). Because registration pursuant to these provisions is available only when the judgment has become final by appeal, or the time for an appeal has passed, Keeton, according to Hustler, may not avail herself of any registration process unless and until Hustler's appeal to the first circuit is resolved in Keeton's favor. Hustler concludes that Article 54 simply is not available for the direct registration of foreign federal judgments in New York state court, and that to hold otherwise would run counter to the federal policy of allowing registration of only those judgments that have been made final by appeal.

Moreover, even should Keeton's judgment become final by appeal, allowing her then to comply with section 1963, Hustler asserts that only section 5018(b) of the New York Civil Practice Law and Rules, and not Article 54, would govern the registration of the judgment in New York state court. In short, Hustler argues that the only enforcement by registration technique available to Keeton is a two-step procedure: she must first register her New Hampshire federal judgment in a New York federal district pursuant to section 1963 and, then, employ section 5018(b) to docket the registered federal judgment in a county clerk's office, thereby converting it to a judgment of the supreme court of that county. Section 5018(b), entitled "[d]ocketing of judgment of court of United States", directs that:

A transcript of the judgment of a court of the United States rendered or filed within the state may be filed in the office of the clerk of any county and upon such filing the clerk shall docket the judgment in the same manner and with the same effect as a judgment entered in the supreme court within the county.

N.Y.Civ.Prac.Law § 5018(b) (McKinney Supp.1987).

As authority for its theory on the unavailability of Article 54 for enforcement in New York of federal court judgments, Hustler cites this court's opinion in *Knapp v. McFarland*, 462 F.2d 935 (2d Cir.1972). *Knapp* also involved a contest over the propriety of a judgment creditor's attempt to register a federal judgment in New York state court. There, however, the underlying judgment, rendered in the United States District Court for the Southern District of New York, had been issued in the same state in which execution was sought and, thus, the judgment creditor proceeded under a combination of 28 U.S.C. § 1962 and N.Y.Civ.Prac.Law § 5018(b). Section 1962 allows that "[e]very judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of general jurisdiction in such State". 28 U.S.C. § 1962. The *Knapp* panel held that the judgment creditor properly filed its Southern District of New York judgment in Supreme Court, New York County under section 5018(b) and, therefore, under section 1962 that judgment served as a lien against the judgment debtor's property located in New York. 462 F.2d at 938.

After resolving that issue, however, the court addressed the argument that the judgment creditor also was required to comply with the separate standards of Article 54. Rejecting that position, the *Knapp* panel wrote "[a] glance at the legislative history of the statutes under consideration makes it clear that Art. 54 was intended to apply only to money judgments rendered by sister states of the United States and not to such judgments of federal district courts, whether in New York or elsewhere." *Id.* at 939. Because the sequential application of section 1963 and section

5018(b) provided a means for enforcing out-of-state federal judgments in New York, the *Knapp* panel concluded that Article 54 was intended to apply only to the judgments of other states. "The purpose of Art. 54 * * * was not to provide for enforcement by registration of federal judgments in New York, which was already authorized by CPLR § 5018(b), but for judgments of sister states." *Id.* at 940.

The quoted language from *Knapp* lends strength to Hustler's theory of the correlation of section 1963, section 5018(b), and Article 54. Nevertheless, since the judgment at issue there was rendered in a New York federal district court, *Knapp*'s comment about the effect of Article 54 on judgments of district courts "elsewhere" was dictum. *Id.* at 939.

As dictum, and because it contradicts both the plain language of Article 54 and its legislative history, the decision in *Knapp* has been criticized by commentators on Article 54. For instance, Professor David Siegel, after describing the procedure offered by section 1963 and section 5018(b), noted: "The continued availability of this easy procedure, though it involves two filings rather than one, will make Article 54 less needful for out-of-state federal judgments. *But Article 54 is an alternative even for a federal judgment.*" N.Y. Civ.Prac.Law § 5402, commentary at 508 (McKinney 1978) (emphasis added). Indeed, while recognizing that *Knapp* had suggested that Article 54 does not apply to federal judgments, Professor Siegel wrote that "under CPLR 5401 it clearly does". D. Siegel, *New York Practice* 577 (4th printing 1983).

With the issue of whether Article 54 is available to register an out-of-state federal judgment in New York state court properly before us on this appeal, we conclude that the dictum in *Knapp* is incorrect, and, therefore, that Keeton properly invoked Article 54 to register her New Hampshire federal judgment in Supreme Court, New York County.

As Professor Siegel indicated, the plain language of section 5401, describing a foreign judgment as "any judgment, decree, or order of a court of the United States", demands that out-of-state federal judgments be included; there can be little question that a judgment of the United States District Court for the District of New Hampshire is a "judgment * * * of a court of the United States".

Moreover, the legislative history of Article 54 supports this plain reading of that provision. In its Sixth Report to the Judicial Conference, the Committee to Advise and Consult on the CPLR recommended adoption of the 1964 version of the Uniform Enforcement of Foreign Judgments Act. The committee opined that "[t]he 1964 Act is simple and straightforward. Its basic philosophy is that a debtor who has had a full scale trial in a sister state or *federal court* need not be given a second full scale trial on the judgment in another state." Sixth Report to the Judicial Conference by the Committee to Advise and Consult on the CPLR, *reprinted in* [1969] McKinney's Session Laws 2273, 2287 (emphasis added) [hereinafter cited as *1969 CPLR Report*]. Likewise, when the matter was again submitted to the legislature the following year, the judicial conference noted that:

> The terms "foreign judgment" and "American judgment" as used in this discussion to describe the scope of this bill are identical in meaning; they include judgments of courts of states of the United States *and courts* in the *Federal jurisdiction.*

Eighth Report of the Judicial Conference on the CPLR, *reprinted in* [1970] McKinney's Session Laws 2777, 2785 (emphasis added) [hereinafter cited as *1970 CPLR Report*].

Simultaneously with its recommendation of Article 54 to the legislature, the judicial conference recommended amendment of two related sections of the Civil Practice Law and Rules, namely, sections 6201 and 3213. Those amendments were designed to make New York procedures generally more fully competent to process out-of-state judgments. The suggested amendment to section 6201 made the remedy of attachment available to "a plaintiff suing on a

sister state, *federal district court* or foreign country judgment", *1969 CPLR Report* at 2288 (emphasis added), and the proposed change in section 3213 was designed to make the remedy of summary judgment in lieu of complaint available to "a judgment creditor who holds a foreign judgment (sister state, *district court* or foreign country)", *id.* at 2289 (emphasis added). Thus, the judicial conference submitted to the legislature, and the legislature adopted, a package of three bills designed to facilitate enforcement in New York of out-of-state judgments, and in support of all three bills it stated that federal court judgments were intended to be included.

The drafters of Article 54 were fully aware that an alternative federal registration scheme already existed:

> Proposed Article 54 is designed to provide for American judgments * * * which are sought to be enforced in New York, the simpler, speedier and less expensive method of enforcement which is now available in the Federal system for the enforcement of judgments of United States district courts.

*1970 CPLR Report* at 2786. Although the drafters' stated intention was to emulate the federal scheme, there is no basis in their report, in the legislative history of Article 54 or in any New York statute or case law for Hustler's position that New York intended to require the filing of a foreign federal judgment in a New York federal court as a prerequisite to registration of the judgment in accordance with Article 54.

In short, Article 54 was meant to be available for enforcement of out-of-state federal judgments and sister-state judgments, and this clear intention should not be overridden simply because the same result could also be achieved by the two-step procedure offered by section 1963 and section 5018(b).

## II. *Preemption.*

■ Hustler urges that, even if Article 54 is construed to allow this result, it is nevertheless preempted by the important federal policy embodied in section 1963 that registration should be permitted only to those judgments made final by appeal. In Hustler's view, a state may not choose to allow registration of an out-of-state federal judgment while an appeal of that judgment is pending. We disagree.

We note, preliminarily, that Hustler points to no express language of preemption. Thus, congress's intent to preempt state law in the area of registration of federal judgments, if any, must be inferred. Such an inference would be appropriate if section 1963 were sufficiently comprehensive to suggest that congress left no room for state legislation, or if the federal interest in finality by appeal were so dominant that congress must have meant to preclude state legislation. *See Hillsborough County, Florida v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). Even if preemption is not demonstrated, state law, of course, may not conflict with federal law. *See id.*

The policy of finality by appeal embraced in section 1963 is not part of a comprehensive scheme. One phrase contained in a three-sentence statute is hardly comprehensive legislation, but even if it were, the Supreme Court has noted a reluctance to infer preemption from mere comprehensiveness of regulation. *See id.* 105 S.Ct. at 2377.

Hustler's suggestion that an inference of preemption is compelled by some dominant federal interest in enforcing only those judgments that are made final by appeal is similarly unavailing. Specifically, Hustler claims that states have no interest in giving more recognition to a federal judgment than would a federal court. Nevertheless, the notion that the federal interest in finality by appeal is, in fact, dominant founders in light of congress's failure to include such a requirement in section 1962. That provision, governing the use of a federal judgment as a lien in the rendering state, unlike section 1963, does not pertain only to judgments made final by appeal. Thus, congress did not think it sufficiently important to have a federal judgment be final-

ized by appeal before it operated as a lien on property. Finally section 1963 on its face, shows a federal interest only in keeping federal courts from registering non-final federal judgments, and expresses no view on state practice. Consequently, we conclude that the federal government's interest in finality by appeal is not so dominant as to preclude all state legislation.

■ Hustler finally maintains that the direct registration of an out-of-state federal judgment under Article 54 is invalid because it directly conflicts with the finality by appeal prerequisite of section 1963. Section 1963, however, applies only to interdistrict registration of federal judgments, a matter of federal practice with which Article 54 does not, indeed could not, deal. Article 54 authorizes for New York state the use of the state's enforcement powers for some out-of-state judgments. While Article 54 may permit enforcement of Keeton's judgment at an earlier stage than would section 1963, it does not thereby conflict with that section. At worst it may permit, as does section 1962, collection based on a judgment that may later be reversed. Nevertheless, that possibility and its remedy have long been contemplated in the law. *See, e.g., Northwestern Fuel Co. v. Brock,* 139 U.S. 216, 219–21, 11 S.Ct. 523, 524–25, 35 L.Ed. 151 (1891). In short, New York has chosen to accord more immediate effect to out-of-state federal judgments than the federal government itself; although it permits a different result, that choice does not conflict with section 1963.

We note that Article 54 does not *require* that a federal judgment pending appeal be immediately enforced. Section 5404 provides two bases for staying enforcement:

(a) Based upon security in foreign jurisdiction. If the judgment debtor shows the supreme court that an appeal from the foreign judgment is pending or will be taken, or that a stay of execution has been granted, the court shall stay enforcement of the foreign judgment until the appeal is concluded, the time for appeal expires, or the stay of execution expires or is vacated, upon proof that the judgment debtor has furnished the security for the satisfaction of the judgment required by the state in which it was rendered.

(b) Based upon other grounds. If the judgment debtor shows the supreme court any ground upon which enforcement of a judgment of the supreme court of this state would be stayed, the court shall stay enforcement of the foreign judgment for an appropriate period, upon requiring the same security for satisfaction of the judgment which is required in this state.

N.Y.Civ.Prac.Law § 5404 (McKinney 1978).

As we have noted, Hustler was twice denied a stay of execution pending appeal by the first circuit. Beyond that, Hustler was not entitled to a stay under section 5404(a), because it refused to file a supersedeas bond in the New Hampshire district court, and, Judge Palmieri's determination that Hustler's conduct was simply another dilatory tactic, combined with Hustler's unwillingness to post a bond, ruled out a discretionary stay under section 5404(b).

The order of the district court denying Hustler's motions to enjoin enforcement of Keeton's judgment and to quash the subpoenas and restraining notices on the Hustler defendants is affirmed.