OPINION OF THE COURT
Titone, J.
Having been tried and convicted in Federal court of various racketeering, conspiracy and fraud counts, petitioners now seek to prohibit the New York County District Attorney from trying them on charges of larceny and securities fraud arising from the same transaction. Their appeal from the judgment below denying them such relief requires us to consider the scope and proper application of CPL 40.20 (2) (e), which establishes an exception to the general statutory rule against successive prosecutions where "[e]ach offense involves death, injury, loss or other consequence to a different victim”. We hold that this exception is available only where each of the offenses in the separate prosecutions involves one or more specific, individually identifiable victims. Accordingly, where, as here, the accuseds have previously been tried and convicted on Federal conspiracy, racketeering and fraud charges, all of which were based on a bribery scheme having no specifically identifiable victims, the "different victim” exception of CPL 40.20 (2) (e) cannot be invoked to justify a separate prosecution for State larceny and securities fraud arising from the same bribery scheme.
At the time the events leading to the charged acts of bribery took place, petitioner Stanley Friedman was the Chairman of the Bronx Democratic Party and petitioner Marvin Kaplan, Friedman’s friend, was a businessman involved with several data processing concerns, one of which had previously obtained a contract with the New York City Parking Violations Bureau (PVB). In 1982, according to prosecution allegations, petitioners bribed one Geoffrey Lindenauer, who was then the Deputy Director of the PVB, and the late Donald Manes, the former Queens Borough President and political leader with reputed city-wide influence. The object of the bribe was to ensure that, Citisource, Inc., a corporation owned by petitioners, would be awarded a lucrative PVB *225 contract for the development and production of a hand-held computerized device for issuing parking summonses.
The alleged bribe to Manes and Lindenauer purportedly took the form of Citisource stock, which was to be held secretly in petitioner Friedman’s name in order to conceal the illegal bribe transaction and Lindenauer’s patent conflict of interest. The PVB contract was, in fact, subsequently awarded to Citisource. Shortly thereafter, the corporation, which had no other assets, made a public stock offering. Of course, neither the bribe to Lindenauer and Manes nor the surreptitious retention by Friedman of the Citisource shares that had been issued to Manes and Lindenauer was disclosed in the offering statement.
As a result of a subsequent investigation, the bribe leading to the awarding of the PVB contract was eventually uncovered. In the wake of the ensuing publicity, petitioners Friedman and Kaplan were indicted — within a two-week period — by Grand Juries for both New York County and the United States District Court for the Southern District of New York.[1] These indictments were evidently the products of extensive cooperation among prosecutors at the county, State and Federal levels.
The 41-page Federal indictment charged petitioners with, among other crimes, violating the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 USC § 1961 et seq.) by "transforming] the PVB from a public agency * * * into a vehicle for the corrupt profit of county leaders, public officials, private businesses and private businessmen.” Among the means by which this "transformation” was allegedly effected was the bribe paid to Lindenauer and Manes to secure the PVB contract for Citisource. Additionally, petitioners were charged with conspiracy to violate RICO (see, 18 USC § 1962 [d]; see also, § 1962 [c]) and mail fraud (see, 18 USC § 1341), accomplished by sending certain false and fraudulent documents in connection with the PVB-Citisource contract through the United States Postal Service. The alleged object of the latter charge was "to defraud the * * * citizens of the City of their right to the honest and loyal services of Manes, Linde *226 nauer and * * * their right to have the business and affairs of the City * * * and the PVB conducted honestly and free from fraud, corruption and the illegal receipt of bribes.”[2]
The 34-page, 27-count New York County indictment, in contrast, charged petitioners with violating the antitrust provisions of the Donnelly Act (General Business Law § 340), violating the securities fraud provisions of the Martin Act (General Business Law § 352-c) and committing the crimes of second degree grand larceny (Penal Law § 155.35 [now § 155.40]) and second degree bribery (Penal Law § 200.00 [now § 200.03]). A count of conspiracy to commit the crimes of grand larceny, securities fraud and offering a false instrument for filing (see, Penal Law § 105.05) and a separate count of second degree bribe receiving (Penal Law § 200.10 [now §200.11]) against Friedman alone were also stated in the indictment.[3] The factual basis for each of these charges included, as an essential component, the bribe to Manes and Lindenauer and the resulting corruption of the process through which the PVB contract was awarded to Citisource. The securities fraud and larceny counts were predicated specifically on petitioners’ failure to disclose the bribe transaction in the Citisource stock prospectus, resulting in the defrauding of "members of the public” and financial loss to specific named investors.
After extensive discussions among the local and Federal prosecutors and the Judges handling the respective cases, it was determined, over objection by the New York County District Attorney, that the Federal trial would proceed first. Conducted between September 22 and November 25, 1986, the Federal trial terminated in a conviction against petitioner Friedman for mail fraud and RICO violations and a conviction against petitioner Kaplan for those crimes as well as the crime of perjury. On March 11, 1987, Friedman was sentenced to 12 years’ imprisonment and five years’ probation; Kaplan was sentenced to four years’ imprisonment and was fined $250,000.
Following the Federal trial, petitioners commenced the *227 present article 78 proceeding seeking an order prohibiting further prosecution under the New York County indictment (see, e.g., Matter of Abraham v Justices of N Y. Supreme Ct., 37 NY2d 560, 564 [prohibition lies to challenge successive prosecution under CPL 40.20]). Contending that the charges arose out of the same transaction as formed the basis of the counts in the Federal indictment, petitioners argued that separate prosecution would violate their constitutional and statutory double jeopardy rights. In response, the New York County District Attorney conceded that prosecution of seven of the counts in the New York County indictment — conspiracy, larceny from New York City (two counts), bribery and bribe receiving (four counts) — was precluded under the statutory scheme. However, he argued that prosecution of the securities fraud and larceny counts was permissible because those charges and the Federal counts did not arise from the same transaction. Additionally, he argued that each of the 20 remaining counts were separately prosecutable because even if they had arisen from the same transaction, they also fell within various exceptions to the statutory rule prohibiting successive prosecution.
After hearing oral argument on the petition, the Appellate Division accepted the District Attorney’s concession and, in addition, prohibited prosecution of the Donnelly Act antitrust counts, reasoning that the Federal RICO claims "encompass[ed]” the wrongs with which those counts were concerned. The court, however, denied petitioners’ request for a writ of prohibition with respect to the charges alleging fraud in the sale of securities (3 counts) and grand larceny from named investors (15 counts). Citing CPL 40.20 (2) (e), the court stated in connection with these charges that "[n]one of the individuals or organizations to which the securities were sold is mentioned in the Federal indictment” and that "[a]n ordinary 'Blue Sky’ contention is not included in a 'RICO’ prosecution.” (131 AD2d, at 399.) Petitioners then appealed by permission of this court.
On this appeal, respondent District Attorney has abandoned his argument that the pending securities fraud and grand larceny counts do not arise out of the same transaction as the Federal RICO counts. Further, the District Attorney has expressly relinquished any reliance he might previously have placed on the other statutory exceptions and has instead concentrated his arguments principally on CPL 40.20 (2) (e), which permits separate prosecution for offenses arising out of *228 the same transaction where the prosecutions involve loss or injury to different victims. Finally, no reliance has been placed on CPL 40.20 (2) (h) (enacted L 1986, ch 516), which establishes a new exception where one of the offenses to be separately prosecuted is "enterprise corruption” (see, Penal Law § 460.20) or "racketeering” in violation of Federal law. This new law, effective November 1, 1986, is not applicable to the present case because the Federal prosecution in issue was commenced before that date.
Thus narrowed, the District Attorney’s argument is, in essence, that the Federal charges all focused upon the allegations of bribery and corruption of governmental agencies through a pattern of "racketeering.” Even the mail fraud charge, as the District Attorney notes, concerned the use of the Federal mail system to defraud the City of New York. The victims of these crimes, according to the District Attorney, were the citizens and taxpayers of New York City, who had a right to honest decision making by their public officials and were deprived of that right by petitioners’ unlawful machinations. In contrast, the victims of the remaining counts in the New York County indictment — securities fraud and grand larceny — were the investing public at large and the named individual investors who lost money as a result of petitioners’ failure to disclose the bribe transaction. Inasmuch as the Federal and local indictments concern two entirely separate classes of victims, the District Attorney argues, separate prosecution is not statutorily barred (see, CPL 40.20 [2] [e]).
We conclude, however, that the exception provided in CPL 40.20 (2) (e) for offenses involving different victims has no application in this situation. Prior cases in which the "different victim” exception was successfully invoked have all involved successive prosecutions for offenses that arose from the same transaction but caused loss or injury to separate, individually identifiable persons or entities (see, e.g., People v Luongo, 47 NY2d 418; People v Dean, 56 AD2d 242, affd 45 NY2d 651; Matter of Carney v Leary, 106 AD2d 176; see also, People v Rodgers, 184 App Div 461, affd 226 NY 671). In petitioners’ case, in contrast, the Federal RICO, conspiracy and mail fraud counts, which all related to the corrupting effect of official bribery, have no specific, individually identifiable victims. Rather, as is apparent from the District Attorney’s own argument, the "victims” of those Federal crimes may be defined only by reference to a general class of individuals— *229 citizens and taxpayers of New York City — who were in a position to be wronged by the corruption of New York City officials.
To permit application of the CPL 40.20 (2) (e) "different victim” exception in these circumstances would be to distort the carefully crafted statutory double jeopardy scheme. Virtually any criminal act may be described either in terms of the evil or harm that the relevant penal legislation was designed to prevent or in terms of a general category of "victims” corresponding roughly to that evil or harm. Thus, if the "different victim” exception were construed to encompass cases involving different classes of victims, as the District Attorney here urges, it would, in effect, substantially overlap with the entirely distinct statutory exception that applies when "[e]ach of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil” (CPL 40.20 [2] [b]).
Such a result is not acceptable in this context. Each of the statutory exceptions to the general rule proscribing successive prosecution for offenses arising from the same transaction was drafted to address a particular situation in which the statutory prohibition was deemed overly broad (see, People v Rivera, 60 NY2d 110, 114). The "different harm or evil” exception, which is potentially quite broad, has been legislatively narrowed by the requirements, not applicable to the "different victim” exception, that each crime have at least one element not shared by the other and that the "harm or evil” to be addressed by the separate prosecutions be analyzed by reference to the "statutory provisions defining such offenses” rather than to the particular criminal acts charged. Given this important distinction between the exceptions prescribed in CPL 40.20 (2) (b) and 40.20 (2) (e), an interpretation of the latter that would permit the exceptions to be used in a virtually interchangeable manner could well lend itself to unilateral evasion by the very entity that the Legislature sought to regulate by enacting a statutory double jeopardy protection for those accused of crimes.
In this case, for example, the District Attorney has understandably chosen to abandon an argument he made in the courts below that separate prosecution of the State securities fraud and larceny charges may be justified under the "differ *230 ent evil” exception to the statutory double jeopardy rule.[4] Yet, the argument he now makes — that the prosecution is maintainable under the "different victim” exception — is essentially the same. In effect, the District Attorney has attempted to invoke the "different victim” exception of CPL 40.20 (2) (e) by simply recasting the harm or evil that was the object of the particular Federal RICO-fraud prosecution — the corruption of government and the consequent distortion of government’s purposes — in language that focuses on the ultimate victims of such conduct — the citizens of the affected governmental entity. The net result of this facile argument, however, is the circumvention of the more demanding requirements of CPL 40.20 (2) (b), which looks not to the evil toward which the particular prior prosecution was directed, but rather to the broader evil to which the penal statute in question was addressed. Such an outcome is unacceptable and demonstrates vividly why we must reject the application of CPL 40.20 (2) (e) that the District Attorney urges.
To summarize, we hold that the "different victim” exception specified in CPL 40.20 (2) (e) is available only when all of the offenses included in a prior prosecution involved specific, individually identifiable victims and the second prosecution arising from the same transaction involves other individual victims (see, e.g., People v Luongo, supra). In instances where, because of either the nature of the offense or the nature of the specific criminal acts charged, identification of a specific victim is not feasible, separate prosecution may be justified only if the conditions in one of the other statutory exceptions, such as CPL 40.20 (2) (b), are fully satisfied. As applied to this case, these principles lead to the conclusion that the remaining counts in the New York County indictment, which charge *231 petitioners with securities fraud and grand larceny, cannot be prosecuted in light of the prior Federal prosecution for RICO violations and fraud. Because the latter prosecution did not involve specific, individual victims, the exception set forth in CPL 40.20 (2) (e) is unavailable and the general rule prohibiting separate prosecution of offenses arising from the same transaction is controlling.
In light of our decision on the proper application of the statutory double jeopardy provisions, we need not consider petitioners’ other arguments addressed to the State and Federal constitutional double jeopardy proscriptions (US Const 5th, 14th Amends; NY Const, art I, § 6). Accordingly, the judgment of the Appellate Division, insofar as appealed from, should be reversed, with costs, and the petition granted in its entirety.

. Following the issuance of the New York County indictment, the District Attorney of that county also commenced a civil forfeiture action, under article 13-A of the CPLR, against Friedman, Kaplan and Citisource. The propriety of the provisional relief afforded the District Attorney in that action was considered in Morgenthau v Citisource, Inc. (68 NY2d 211).

. In addition to the RICO, conspiracy and mail fraud counts, petitioner Kaplan was charged with one count of perjury for his alleged dishonesty before the Securities Exchange Commission (18 USC § 1621).

. The aspect of the conspiracy count relating to the crime of offering a false instrument for filing (see, Penal Law § 175.35) referred to a separate substantive count in the indictment that was asserted only against a codefendant, Martin Solomon.

. It is clear that the Federal RICO statutes under which petitioners were prosecuted were "designed to prevent” the enhanced evil and societal harm that occurs when criminal activities, of many types, are conducted in organized form (see, e.g., United States v Turkette, 452 US 576, 588-590; Preamble, Organized Crime Control Act of 1970, 84 US Stat 922-923). Such criminal activities as securities fraud and theft conducted through legitimate and illegitimate organizations were plainly contemplated. In fact "harm to investors” was one of the targeted evils specifically mentioned when the legislation was enacted (see, 84 US Stat 922). Thus, even though the elements of the previously prosecuted Federal RICO crimes may differ from those of the State securities fraud and larceny crimes that the District Attorney now wishes to pursue, it can hardly be said that the underlying penal statutes were aimed at "very different kinds of harm or evil” within the meaning of CPL 40.20 (2) (b) (see, Matter of Abraham v Justices of N. Y Supreme Ct., 37 NY2d 560, 567).