The **CITY OF NEW YORK,** Plaintiff,

v.

**CITISOURCE, INC., Stanley M. Friedman, Marvin B. Kaplan, Albert J. Kaplan, Marvin H. Kushnick and E. Martin Solomon,** Defendants.

No. 86 Civ. 9900 (WCC).

United States District Court,
S.D. New York.

Jan. 14, 1988.

Peter L. Zimroth, Corp. Counsel, New York City (Helene Fromm and Steven R. Levi, Asst. Corp. Counsel, of counsel), for plaintiff.

Leon Friedman, New York City (Gerald B. Lefcourt and Joshua L. Dratel, of counsel), for defendants Stanley Friedman and Marvin Kaplan.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

On December 22, 1987, the City of New York, plaintiff in this action, moved this Court by order to show cause for an attachment and a temporary restraining order ("TRO"). The Honorable Peter K. Leisure, acting in his capacity as a Part I judge, provisionally granted the attachment and the temporary restraining order until such time as I could give the motion full consideration. The City now moves pursuant to rule 64, Fed.R.Civ.P., for a continued order of attachment against the following assets of defendants Stanley M. Friedman and Marvin B. Kaplan: (1) a bank account at European American Bank in the name of Stanley M. Friedman, P.C., in the amount of $276,963.64; (2) two bank accounts at Chemical Bank in the name of Marvin B. Kaplan in the amount of $5,130.00; and (3)

an account in the amount of $400,000.00 in the name of Desu Consulting and Leasing Co. Retirement Trust, account # 006–044–425. The parties submitted memoranda of law, and on January 7, 1988, after hearing oral argument on the motion, I extended the TRO for ten days while I considered whether to continue the attachment. For the reasons set forth below, the attachment is vacated.

### I. Facts

In this action the City seeks treble damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) & (d) (1982), for injury sustained as a result of defendants' bribery of Geoffrey Lindenauer, the former Deputy Director of the City's Parking Violations Bureau ("PVB"), and Donald Manes, the former Queens Borough President.[1] The bribes were intended to favorably influence the actions of Manes and Lindenauer as public servants in connection with the award of a $22.7 million City contract to defendant CitiSource, Inc. for delivery of hand-held computerized summons issuing devices.

On November 25, 1986, a federal jury found Friedman and Kaplan guilty of criminal charges of racketeering, RICO conspiracy and mail fraud in connection with the award of the CitiSource contract. The jury found that defendants Friedman and Kaplan, unlawfully, willfully and knowingly conducted and participated in the conduct of the affairs of the PVB through a pattern of racketeering activity, as that term is defined by sections 1961(1) and 1961(5) of RICO, by bribing Manes and Lindenauer with shares of CitiSource stock which were held for them by defendant Friedman.

On March 11, 1987, Friedman and Kaplan were sentenced and judgment of conviction was entered. Friedman was sentenced to a twelve-year prison term, to be followed by five years probation, and ordered to forfeit his CitiSource shares. The Court also barred Friedman from participating in politics in any way, other than to exercise his

---

1. The City also has stated claims for common law fraud and fraudulent concealment, inducement to breach of fiduciary duty, a constructive trust, restitution, breach of contract warranties, breach of contract, loss of revenues and liquidated damages.

right to vote. Kaplan was sentenced to a four-year prison term and a $250,000 fine, and ordered to forfeit his CitiSource shares. Friedman and Kaplan have appealed their convictions. The appeal, which was argued in September 1987, is still pending.

On approximately March 27, 1986, the Manhattan District Attorney filed an indictment against defendants Friedman and Kaplan and other CitiSource principals based on the fraudulent procurement of the CitiSource contract and subsequent public offering of CitiSource stock. The District Attorney also obtained orders of attachment in a related state civil forfeiture action against the same assets attached in this case. The attachment orders were based on the same circumstances which gave rise to the state indictment. On December 17, 1987, the New York Court of Appeals barred the District Attorney from proceeding with the criminal prosecution of Friedman and Kaplan under the state indictment, on the ground that the state prosecution violated the double jeopardy clause of the State and Federal Constitutions. *Kaplan v. Ritter*, 71 N.Y.2d 222, 227, 519 N.E.2d 802, 525 N.Y.S.2d 1 (1987). Defendant has since submitted a proposed order to the state court, on consent of the District Attorney, to vacate the attachment.

In his affidavit in support of the order to show cause, and in his supplemental affidavit in support of the motion to continue the attachment, John F. Grubin, the Chief of the Commercial Litigation Division of the Corporation Counsel, states that Friedman has taken steps to withdraw money from the Stanley M. Friedman, P.C. account prior to any court order vacating the state court attachment. Grubin Aff. at 5, n. 4; Grubin Supp.Aff. at ¶ 17. Similarly, Kaplan is alleged to have attempted to transfer to himself in bearer form a $400,000 treasury bill which was being held in the Desu Retirement Trust. Grubin Supp.Aff. at ¶ 19. Friedman has submitted the affidavit of Jon D. Karnofsky, counsel to European American Bank, in which Karnofsky asserts that Friedman was merely inquiring as to the procedure for gaining access to his account if the attachment was lifted. Karnofsky Aff. at ¶ 9. Kaplan also submits an affidavit made by Barbara Petrillo, a manager in REBC Associates, which performs administrative functions for the trustees of the Desu Retirement Trust. The Petrillo affidavit states that the trust agreement provides Kaplan with the authority to register any of the trust's securities in his own name, as trustee.[2] Petrillo Aff. at ¶ 7.

## II. *Discussion*

Rule 64 allows for seizure of property, by attachment or otherwise, under the circumstances and in the manner provided by state law. New York's attachment statute is contained in article 62 of the Civil Practice Laws and Rules (McKinney 1980 & Supp.1988) ("CPLR"). CPLR § 6212(a) lists four requirements for an attachment: (1) a cause of action; (2) probability of success on the merits; (3) a § 6201 ground for relief; and (4) that the amount demanded from defendant is greater than all known counterclaims.

The City relies on § 6201(4) as its ground for attachment. § 6201(4) provides for an attachment when the cause of action seeks a money judgement and when the action is based on a judgment of a court of the United States that is entitled to full faith and credit.[3] The City bases its present action for a money judgment on the collat-

---

**2.** Although not relevant to the Court's determination on this motion, the Court assumes that if the attachment is lifted, the defendants will do everything in their power to place the assets beyond the reach of execution of any judgment against them.

**3.** § 6201 provides in pertinent part:
§ 6201. Grounds for attachment
An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:

    4. the cause of action is based on a judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this state, or on a judgment which qualifies for recognition under the provisions of article 53.

eral estoppel effect of the criminal RICO conviction of defendants Kaplan and Friedman in federal district court. The criminal RICO conviction, the City asserts, is a judgment of a court of the United States that is entitled to full faith and credit.

Defendants assert that the New York attachment statute has no application when a criminal judgment of conviction is the sole basis for the attachment since a criminal judgment is not entitled to full faith and credit. In addition, defendants assert that the purpose and legislative history of CPLR 6201(4) show that it cannot be invoked unless a money judgment for a sum certain was obtained in a foreign jurisdiction or a court of the United States.[4]

New York acknowledges that attachment is a harsh remedy which must be strictly construed "in favor of those against whom it may be employed." *Interpetrol Bermuda, Ltd v. Trinidad & Tobago Ltd.*, 135 Misc.2d 160, 168, 513 N.Y.S.2d 598, 603 (Sup.Ct.1987) (quoting *Penoyar v. Kelsey*, 150 N.Y. 77, 44 N.E. 788 (1896)); *see Merrill Lynch Futures, Inc. v. Kelly*, 585 F.Supp. 1245, 1259 (S.D.N.Y.1984). A strict reading of § 6201(4) requires that the Court give effect to the requirement that the judgment on which the City relies be entitled to full faith and credit.

█ As long ago as 1892, the United State Supreme Court held that under the full faith and credit clause of the Constitution, a state is not bound to enforce a sister state's penal laws.[5] *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892). The Supreme Court has consistently reaffirmed this proposition, as has the Court of Appeals of the State of New York. *See, e.g., Nelson v. George*, 399 U.S. 224, 229, 90 S.Ct. 1963, 1966, 26 L.Ed.2d 578 (1970) ("Since the Full Faith and Credit Clause does not require that sister States enforce a foreign penal judgment, ... California is free to consider what effect if any it will give to the North Carolina detainer...."); *Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 271, 56 S.Ct. 229, 231, 80 L.Ed. 220 (1935) (suit for taxes reduced to a money judgment for a sum certain found to be civil in nature and therefore enforceable); *Farmland Dairies v. Barber*, 65 N.Y.2d 51, 56, 478 N.E.2d 1314, 1318, 489 N.Y.S.2d 713, 716 (1985) ("criminal judgments are not entitled to full faith and credit"). The City here seeks to rely on the collateral estoppel effect of defendants criminal convictions as a basis for the attachment of defendants property. The criminal convictions, however, are not entitled to full faith and credit, and therefore, do not provide a basis for attachment under § 6201(4).

The principle of narrow construction that applies to the remedy of attachment also requires that the Court heed the purpose and legislative history of § 6201(4). The Second Circuit undertook an analysis of the history and purpose of § 6201(4) in *Keeton v. Hustler Magazine, Inc.*, 815 F.2d 857 (2d Cir.1987).

Prior to 1970, a person securing a judgment for a sum certain in a foreign jurisdiction would have to start all over again in a New York court suing on his foreign judgment. That foreign judgment would be conclusive as a matter of evidence under the full faith and credit clause, but procedurally, the successful out-of-state plaintiff would still have to serve a new summons and complaint in New York on the defendant and then move for summary judgment based on the foreign decree. In 1970, the

---

**4.** Defendants also assert that their federal RICO convictions do not establish their civil RICO liability to plaintiffs under the doctrine of collateral estoppel, and further, that the Desu employees retirement trust account is not subject to attachment because, as a qualified employee benefits plan under the Employee Retirement Income Security Act, it is inalienable. The Court, however, relies solely on the language and legislative history of § 6201(4) in denying the attachment. Consequently, the Court does not address the merits of these arguments.

**5.** The issue in *Huntington*, was whether a money judgment granted by a New York court was a penalty, in which case it could not be enforced under the full faith and credit clause of the Constitution, or merely a civil judgment, in which case it could be enforced. The Court held that it was not a penal judgment and therefore could be enforced under the full faith and credit clause.

New York legislature passed a series of amendments to the CPLR, including § 6201(4),[6] to make it easier to enforce foreign judgments. Addressing this group of amendments, the Second Circuit stated,

> Those amendments were designed to make New York procedures generally more fully competent to process out-of-state judgments. The suggested amendment to section 6201 made the remedy of attachment available to a 'plaintiff suing on a sister state, *federal district court* or foreign country judgment', *1969 CPLR Report* at 2288 (emphasis added) and the proposed change in section 3213 was designed to make the remedy of summary judgment in lieu of complaint available to [foreign judgment creditors]. Thus the judicial conference submitted to the legislature, and the legislature adopted, a package of three bills designed to facilitate enforcement in New York of out-of-state judgments....

815 F.2d at 860–61.

 As discussed in *Keeton*, the legislative history demonstrates that § 6201(4) was adopted to facilitate the enforcement of judgments. The City, however, is not suing to enforce a judgment, but rather seeks to employ the doctrine of collateral estoppel to prevent the defendants in this action from litigating issues of fact that they already litigated in the criminal RICO case. An attachment in this case, therefore, is not consistent with the purpose for which the legislature adopted § 6201(4).

### III. *Conclusion*

For the foregoing reasons, the motion to continue the attachment is denied and the attachment is vacated. The vacation will be stayed and the attachment continued during the pendency of any expedited review of this order.

SO ORDERED.

### ORDER

Plaintiff filed this action on August 18, 1986. On May 8, 1987, the Court informed plaintiff by letter that if he did not serve his complaint by June 9, 1987, the action would be dismissed. The Court received a letter from plaintiff on May 27, 1987, and consequently allowed plaintiff until August 1, 1987 to serve his complaint. Plaintiff having failed to make service, the complaint is hereby dismissed.

SO ORDERED.

---

6. When passed in 1970, the subsection was numerated § 6201(7). In 1977, various other amendments were made to § 6201, and subsection seven was renumbered subsection four. No substantive change was made in the wording of the law and it remained as it was passed in 1970.