*84 OPINION OF THE COURT
Martin B. Stecher, J.
This is a motion for final judgment in a forfeiture action (CPLR art 13-A). As it is a civil action (CPLR 1311 [1]) a motion for judgment must be judged by the standards of any motion for summary judgment in a civil action (see, e.g., CPLR 3212, 3213, 3211 [c]); that is, that "there is no substantial fact issue in the case and therefor no necessity for a trial” (Siegel, NY Prac § 278, at 333).
The sorry facts of this case are too well known (see, 68 NY2d 211, revg 121 AD2d 353, on remittitur 128 AD2d 459) to require detailed repetition: suffice to say that the corporate defendant, operating under the direction of most of the individual defendants, mulcted the corporation’s shareholders of their stock subscriptions by false and fraudulent representations, resulting in a 27-count indictment handed down in New York County (People v Kaplan, index No. 1913/86) alleging violations of Penal Law § 155.40 (1) (grand larceny, second degree) and of General Business Law § 352-c (2), (5) and (6) (the Martin Act) and § 340 (the Donnelly Act). Defendant Robert Richards on March 26, 1986 pleaded guilty to two counts of grand larceny in the second degree, both felonies (and to other counts as well) to satisfy the indictment. Thus the action is grounded upon a postconviction forfeiture crime (CPLR 1310 [5]; 1311 [1] [a]). The indictment against other of the defendants was dismissed on former jeopardy grounds (CPL art 40; Matter of Kaplan v Ritter, 71 NY2d 222); they, subsequent to this indictment, having been convicted in a Federal court of crimes arising out of the same acts as those alleged in the New York County indictment. It is clear then that this action is based not only on Richards’ felony conviction but "upon criminal activity arising from a common scheme or plan of which such * * * [felony] conviction [was] a part” (CPLR 1311 [1] [a]).
The facts of the complaint are neither denied nor contested, either by any defendant or any creditor. Indeed, most of the individual defendants join in the application. Accordingly, there is no dispute that the corporate defendant and most of the individual defendants induced the noncontrolling shareholders of the corporation, by fraud, to purchase worthless shares of stock in Citisource, Inc., that the corporation had, and has, no cash or equivalent assets but sums obtained by this fraud, and that the sums previously attached are the proceeds of a crime (CPLR 1310 [2]).
*85 The defrauded shareholders have begun several shareholders’ derivative actions which have been consolidated in the United States District Court for the Southern District of New York (In re Citisource, Inc., 86 Civ 1711 [GLG]). The claiming authority, the class action representatives and most of the individual defendants ask that the fund be transferred to the Federal court’s jurisdiction so that it, together with sums already contributed or committed by certain of the individual defendants and the underwriter, may be paid out to the defrauded class in partial liquidation of its members’ claims.
Notice of this application, at the court’s direction, was given by mail to all known creditors of Citisource and to all others by newspaper advertisements. Many have presented claims to the court in writing, but none has begun "a special proceeding against the claiming authority to determine the rights of adverse claimants to the property or debt” (CPLR 1327; cf., CPLR 6221); and none is a judgment creditor (see, CPLR 6226, 5234; 7A Weinstein-Korn-Miller, NY Civ Prac f 6226.04).
With two exceptions, all of the claims are for goods or services provided to the corporation. The exceptions are for services rendered to the former receiver by Parker, Chapin, Flattau and Klimpl, Esqs. in the reduced sum of $22,825.72, and by Ernst & Young’s predecessors, Ernst and Whinney, in the reduced sum of $20,000. Both of these applications are approved and the District Attorney shall pay these sums to these claimants. (The claimant E. Martin Solomon waived his claim on the record.)
The principal creditor of Citisource is the law firm of Stroock & Stroock & Lavan, Esqs. which has diligently sought to separate its claims for legal services rendered the corporation from services rendered the individual defendants and has pressed only its claim against the corporation. This law firm asserts its retaining lien as "a claim against all of the client’s assets” and asserts that this lien is therefore cognizable under CPLR 1349 (2) (a) as a first "order of priority” payment to be made of the attached fund.
As was made clear by Governor Cuomo in his memorandum dated August 1, 1984 issued on signing CPLR article 13-A into law, the statute’s primary purpose is the seizure and forfeiture of the proceeds of crime as a law enforcement measure. Restoration of the property to its true owners, if any, is not the reason the statute was enacted; but the Legislature, sensitive to claims of the innocent to the property, provided *86 for proceedings to determine adverse claims (CPLR 1327) and, upon forfeiture, a set of priorities for distribution of the forfeited property (CPLR 1349). The highest priority for distribution is given to "[a]mounts ordered to be paid by the court in satisfaction of any lien or claim against property forfeited” (CPLR 1349 [2] [a]). The priority is not given to those with liens on nonforfeited property of the person whose property was forfeited, nor is it given to those with claims against the person or corporation whose property was forfeited. The statute was carefully drawn to recognize only liens against, and claims of title to, the forfeited property.
The statute, in creating a "descending order of priority” for distribution of the property, makes no provision for distribution of forfeited funds or property to creditors of the person or corporation whose property is forfeited; and this is consistent with the statutory scheme of distributing attached property in nonforfeiture actions: to the swift belongs the prize (CPLR 6226, 5234). Nor do I see a moral problem in this case: Why should the thief s debt be paid from the victim’s purse? As indicated above, the only assets attached were the proceeds of the shareholders’ stock subscriptions.
Stroock’s retaining lien, contrary to Stroock’s contention that "it is a general lien for the entire balance of the account between the attorney and the client”, is a lien only on that portion of the client’s property delivered by the client or, in its behalf, to the attorney. Robinson v Rogers (237 NY 467) cited by Stroock in support of this proposition is inapposite for there the attorney had not only a retaining lien but a charging lien (Judiciary Law § 475) and had procured a recovery for his client to which the charging lien attached. No effort has been made by the claiming authority (CPLR 1310 [11]), the plaintiff here, to divest this law firm of anything which has come into its possession or of any lien it may have "upon [its] client’s cause of action, claim or counterclaim * * * [or] the proceeds thereof’ (Judiciary Law § 475).
The retaining lien which Stroock has on property delivered to it by its client "is entirely distinct from the lien of an attorney created by statute (Judiciary Law, § 475)” (Matter of Cooper, 291 NY 255, 260). In short Stroock & Stroock & Lavan may have a lien, but it is not upon the funds attached and is therefore not entitled to the priority created by the statute for liens (CPLR 1349 [2] [a]). That priority is limited to liens upon the money or property attached by the claiming authority. Thus, as to the attached fund, this law firm is a general *87 creditor of Citisource along with the other creditors who have brought their claims to the court’s attention.
There being no "lien or claim against [the] property forfeited” (CPLR 1349 [2] [a]) we must consider the remaining sequence of distribution mandated by the statute. Subdivision (2) (b) of CPLR 1349 provides for distribution of "[a]mounts ordered to be paid by the defendant in any other action or proceeding as restitution, reparations or damages to a victim of the crime, which crime constituted the basis upon which forfeiture was effected under this article, to the extent that such amounts remain unpaid”.
Certainly shareholders of Citisource, in a successful derivative action against the corporation, are among the persons contemplated by subdivision (2) (b) of CPLR 1349. From the record before me, it appears that a settlement has been agreed to between the class action plaintiffs in the Federal action and defendants Citisource, Inc., Stanley M. Friedman, Marvin B. Kaplan, Albert J. Kaplan, David Kaplan, Morton Karper, Marvin H. Kushnick, E. Martin Solomon, Richard Bright and D. H. Blair & Co., whereby D. H. Blair & Co. will contribute $450,000 "plus the assignment of certain claims” and Friedman, the Kaplan defendants, Karper, Kushnick, Solomon and Bright will contribute $540,000 to the settlement. Contemplated by the parties as a further contribution is "at least $710,000 * * * out of the forfeited funds now in possession of the District Attorney, New York County,” the attached fund held here.
The class action attorneys inform me that the settlement "is contingent upon * * * [b] District Judge Goettel’s order and judgment approving the settlement as fair and reasonable pursuant to Fed. R. Civ. P. 23 [e].”
I approve in principal the distribution of the net remaining funds to the defrauded shareholders in such proportion as Judge Goettel may confirm in his judgment to be entered. At the moment, however, there is no judgment. Furthermore, even should the fund be turned over to the Federal court for distribution to shareholders, as is often the case, a portion of such funds may become undeliverable. Our statute provides that, in the descending order of distributional priorities, sums not paid to others entitled to them under CPLR 1349 are to be paid "[t]o the general fund of the city of New York” (CPLR 1349 [2] [g]). I cannot waive this right.
I conclude, therefore, that the motion should be, and is, *88 granted to the extent that the two claims for services rendered the former receiver and expressly authorized to be paid herein be paid by the District Attorney; that the balance of the fund be distributed by the District Attorney to the Citisource shareholders in the proportion approved by Judge Goettel in the judgment he may enter, without deduction except for necessary expenses of mailing and distribution. The District Attorney may, if he chooses, engage in a joint distribution of checks to shareholders with the person designated by Judge Goettel to make distribution to the class action plaintiffs; and any sum remaining undistributed will be subject to the further order of this court. On making any distribution to shareholders pursuant to the terms of the judgment to be settled, the District Attorney shall promptly make a report thereof, by affidavit, to the court.